IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Priscilla Reid Hammond, | ) | C/A No.: 3:10-cv-02441-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER GRANTING** |
| | ) | **SUMMARY JUDGMENT** |
| AlliedBarton Security Services, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on Defendant AlliedBarton Security Services, LLC's ("AlliedBarton") Motion for Summary Judgment. (ECF No. 47). AlliedBarton claims that it is entitled to summary judgment on Plaintiff Priscilla Reid Hammond's ("Hammond") negligence cause of action against Defendant. Hammond's negligence claim stems from a 2008 incident— she was attacked in a parking lot of Kershaw County Medical Center ("KCMC" or "the Hospital") where AlliedBarton provided security services.

**I.      Factual and Procedural History**

On the night of June 11, 2008, Hammond accompanied her daughter to the emergency room at KCMC because her daughter was in need of medical care. Around 1 a.m. on June 12, 2008, Hammond left the emergency room to retrieve some of her daughter's medical records from her car, which was parked in the KCMC emergency room parking lot. As she left the emergency room, Hammond told Thomas that she was going to her car and that she would be right back, but she did not ask Thomas to watch her, nor did she request an escort to her car.

When Hammond got to her car, a man who had been loitering in the parking lot approached her. He demanded her car keys and then began beating her with a pistol that he was holding. He forced her to the ground and took her keys. As this was happening, another woman

1

who was in the parking lot, Marie Andrews, heard Hammond's screams and intervened. Hammond's assailant then jumped into her car and sped out of the parking lot, almost running over Hammond and Andrews in the process. Hammond suffered serious injuries from the attack, including a concussion, severe bruising, and several lacerations. According to Plaintiff, multiple medical professionals have also diagnosed her with post-traumatic stress disorder as a result of the incident.

On March 31, 2009, Hammond brought suit against KCMC with negligence claims arising out of the parking lot attack. Hammond's alleged damages in that case were identical to those alleged in this case. Hammond settled with KCMC for $150,000.00. Later, Hammond filed this lawsuit sounding in negligence against AlliedBarton. Hammond has alleged that AlliedBarton assumed and breached a duty of due care, which included (1) the maintenance of visible and conspicuous patrol in all waiting, parking and construction areas, the birthplace, hospital perimeter, health information services, psychiatry, patient services, stairwells, and any back areas other than surgery, recovery, ICU, and nurseries; (2) challenging any suspicious activity or individuals; (3) notation of safety hazards; and (4) reporting any incidents or suspicious activity to superiors. (ECF No. 1). Hammond has further alleged that AlliedBarton failed to protect her from foreseeable criminal acts and failed to provide adequate security measures at KCMC. AlliedBarton has filed a Motion for Summary Judgment on all claims, and Hammond has filed a Memorandum in Opposition to Defendant's Motion. The Court heard oral argument on October 20, 2011.

**II.     Legal Standard**

   **A.     Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law.  *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

   **B.     Duty as a Matter of Law**

According to South Carolina law, the issue of negligence is a mixed question of law and fact.

> The court must first determine whether a duty arises in one party to exercise reasonable care for the benefit of another under the facts of a given case.  The existence and scope of the duty are questions of law.  Thereafter, the jury determines whether a breach of the duty has occurred, and the resulting damages.

*Cummins Atl., Inc. v. Sonny's Camp-N-Travel Mart, Inc.*, 481 F. Supp. 2d 531, 535 (D.S.C. 2007) (citing *Staples v. Duell*, 494 S.E.2d 639, 641 (S.C. Ct. App. 1997)).  "Under South

Carolina common law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Madison v. Babcock Center, Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). However, "[a]n affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Id.* at 656–57 (citing *Jensen v. Anderson County Dept. of Soc. Servs.*, 403 S.E.2d 615, 617 (S.C. 1991); *Miller v. City of Camden*, 451 S.E.2d 401, 404 (S.C. Ct. App. 1994)). For example, South Carolina courts have long held that a business owner has a duty to take reasonable care to protect invitees, but this duty does not extend to protection from the criminal attacks of third parties unless the business owner knew or had reason to know the criminal attack would occur. *Bullard v. Ehrhardt*, 324 S.E.2d 61 (1984).

### III. Analysis

In this case KCMC, as the business owner, had the duty to take reasonable care to protect its invitees. The Hospital chose to hire AlliedBarton to provide security services for its facility but made the decision on which services it would pay AlliedBarton to provide. AlliedBarton contests that it either owed or breached the following duties: a duty arising under its contract with KCMC, a duty to have properly trained and supervised security officers, a duty arising from AlliedBarton's voluntary undertaking of security services for the Hospital. As such, AlliedBarton submits that there is no genuine dispute as to any material fact as a matter of law and that it is, thus, entitled to summary judgment.

#### A.     Duty Under Contractual Agreement

In its Motion for Summary Judgment, AlliedBarton argues that it did not breach any specified duties set forth in its contractual agreements with the Hospital. AlliedBarton contends that it was not retained, nor was it authorized, to provide services outside the scope of the

Protective Services Agreement, which was dictated by the Hospital, and the Post Orders, which were reviewed and approved by the Hospital. On the other hand, Hammond maintains that the Protective Services Agreement and the Post Orders were not the only sources of AlliedBarton's duties, and she further contends that that Defendant did, in fact, breach its contractual duties by failing to patrol the parking lot at 1 a.m. as required by the Post Orders, by failing to offer an escort to Hammond on the night of her attack, and by employing a security guard without the training required by the Post Orders.

The Post Orders give a 24-hour break down of the patrol duties to be performed by the AlliedBarton security guards, and according to those patrol specifics, at 1 a.m. a guard is supposed to "[p]atrol parking lots and grounds." (ECF No. 48-16, p. 23). Plaintiff alleges that if a security guard had been following the schedule provided in the Post Orders, her attack, which occurred at 1 a.m., would have been prevented. However, Defendant points out that the Post Orders further instruct AlliedBarton's security officers to "[f]requently change the time and route of your patrol. This will eliminate the possible thief to time you when you are away or on a particular floor." (ECF No. 48-16, p. 40). The language directing security officers to patrol the parking lots and grounds at 1 a.m. cannot be read separately from the language instructing the security officers to vary the time and route of their patrol. As such, the Post Orders did not create a strict contractual obligation for AlliedBarton to patrol the parking lot at exactly 1 a.m. as proffered by Plaintiff.

As to Plaintiff's contention that AlliedBarton's security officers were expected to be pro-active and to ask hospital visitors if they would like an escort to the parking lot, the Post Orders specifically state that AlliedBarton security officers are supposed to "[p]rovide escorts as requested." (ECF No. 48-16, p. 22). According to the Hospital employee who oversaw security

5

at KCMC, "it would be an unwritten rule as a courtesy to an individual walking out that a guard would ask them if they would like assistance to the parking lot." (ECF No. 50-7, p. 4). After reviewing the Post Orders, the same Hospital employee affirmed AlliedBarton's position that escorts were only to be provided upon request. (ECF No. 52-2, pp. 91–93). This Court cannot find that Defendant had a contractually-created duty to offer escorts to the parking lot based on an "unwritten rule" when the written Post Orders instruct the security officers to provide such an escort "as requested."

Plaintiff's brief repeatedly accuses Thomas of having insufficient training. For example, Plaintiff proffers that "certain minimum training was mandatory for all AlliedBarton security officers, including 'Master Security Officer (MSO) Level 1–5'"[1] and further that Thomas had not completed MSO Level 5 at the time of Hammond's attack. (ECF No. 50, p. 7). Although the Post Orders state that the MSO Levels 1–5 are mandatory, it appears that Plaintiff has misinterpreted the Post Orders to require Hospital security officers to have completed all five MSO levels, as opposed to having completed any of MSO levels 1–5. Chester Ray, a captain with AlliedBarton, stated in his deposition that "[t]here's no requirement for an MSO 5 to be on duty. You can be at any level at any time and, as long as you were hired and a security officer for the company, you can work." (ECF No. 48-14, p. 6–7). Plaintiff has not provided any evidence to contradict Ray's assertion. As such, contrary to Plaintiff's argument, AlliedBarton did not have a contractual duty to have only security officers with minimum training of level of 5 on duty at KCMC.

---

[1] The Master Security Officer Program appears to have been developed by AlliedBarton as a way to train its security officers. According to MSO at a Glance (ECF No. 48-13), AlliedBarton security officers may attain higher MSO levels by staying with AlliedBarton for a specific number of months, by studying specific security topics either on their own or in a classroom setting, and by taking an exam at each level. In order to even attain a level 5, an AlliedBarton security officer must have been with the company for at least 18 months based on the schedule in MSO at a Glance. However, in his deposition, Chester Ray, a captain of AlliedBarton security, indicated that the MSO Program is now self-paced. (ECF No. 48-14, p. 6).

### B.     Duty of Proper Training, Hiring, and Supervision

Defendant asserts that Hammond has failed to provide any legally competent evidence that Defendant improperly trained, hired, or supervised its security officers. Defendant offers that AlliedBarton was a properly licensed security company and that the two security guards working the night of Hammond's attack were properly registered with the South Carolina Law Enforcement Division ("SLED"). Furthermore, AlliedBarton asserts that Plaintiff's expert has not provided any competent evidence that the security officers were either inadequately trained or inadequately supervised.

Hammond submits that she has created a genuine dispute as to whether Defendant's security officers were properly trained and certified based on the testimony of Plaintiff's expert, John Villines. According to Villines's testimony, Thomas was inadequately trained because he could not recall his specific training during his deposition. However, in preparing his report, Villines failed to review either Defendant's security training program documentation or Thomas's actual training. As such, Villines's testimony on whether Thomas was properly trained does not consider the training that Thomas received in the MSO program. Villines also erroneously contends that Thomas had not met the required MSO level to work as a KCMC security guard. As previously discussed, Thomas's MSO level 4 training was sufficient to meet the Hospital's requirements—Villines's interpretation of the Post Orders is incorrect. Based on the foregoing, this Court finds that summary judgment is appropriate as to any breach of duty on the part of AlliedBarton to properly train, hire, and supervise its security officers.

### C.     Duty Arising from a Voluntary Undertaking

Finally, AlliedBarton contests that it either owed or breached a legal duty to Hammond to protect her from the criminal acts of third parties. Plaintiff asserts that she bases her negligence

7

claim, in part, on the theory of voluntary undertaking. According to the law of voluntary undertaking in South Carolina,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Madison ex rel. Bryant v. Babcock Center, Inc.*, 638 S.E.2d 650, 657 (2006) (quoting Restatement (Second) of Torts § 323 (1965)). In this case, Hammond contends that AlliedBarton undertook a general duty to provide security to KCMC, its employees, and its business invitees and that having undertaken such a duty, AlliedBarton was obligated to act with due care. Plaintiff further submits that Defendant failed to exercise due care in this case based on any one of a number of shortcomings, including the failure to patrol the parking lot at 1 a.m., the failure to notice suspicious activity, the failure to see anything related to the attack on closed circuit televisions ("CCTVs"), the deficient training of Thomas, and the failure to offer Hammond an escort.

This Court disagrees with Plaintiff's characterization of the voluntary undertaking by Defendant in this case. As opposed to the general undertaking to provide security, this Court finds that AlliedBarton undertook to provide security for the Hospital as specified in the Protective Services Agreement and in the Post Orders. Moreover, the shortcomings that Plaintiff characterizes as breaches are better characterized as duties that AlliedBarton did not undertake in its agreements with the Hospital. Of course, according to South Carolina law, a contract cannot

limit a tortfeasor's liability—the tortfeasor is subject to a common law duty to exercise due care, which exists independently of a contract. *See Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 343 ("[A] 'tortfeasor's liability exists independently of the contract and rests upon the tortfeasor's duty to exercise due care,' and the 'common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs.'" (quoting *Dorrell v. S.C. Dep't of Transp.*, 605 S.E.2d 12, 15 (S.C. 2004))). However, here, the contract is serving as an indication of the duties undertaken by a party, rather than as a way to limit liability. The South Carolina Supreme Court has recognized that a contract can serve as evidence of a voluntary undertaking. *Madison*, 638 S.E.2d at 137 ("Babcock Center voluntarily undertook the duty of supervising and caring for Appellant as provided in its contractual relationship with the Department."). Other evidence, such as prior conduct or internal memoranda, could also serve as evidence of a voluntary undertaking. *See, e.g.*, *Vaughan v. Town of Lyman*, 635 S.E.2d 631, 637–38 (S.C. 2006) (finding a genuine issue of material fact as to whether there was a voluntary undertaking of the maintenance of town sidewalks where there were references to sidewalk maintenance in town minutes; there were town ordinances regulating sidewalks; town was aware of complaints about the sidewalks and did not report these to any other authority; and the town had previously handled complaints about sidewalks); *Fickling v. City of Charleston*, 643 S.E.2d 110, 116 (S.C. Ct. App. 2007) (fielding complaints, maintaining a log of calls, and having a policy and employees in place to repair sidewalks was used by a court as evidence to assess whether there was a voluntary undertaking). If there were "'factual issues regarding whether the defendant was in fact a volunteer, the existence of a duty [would] become[] a mixed question of law and fact to be resolved by the factfinder.'" *Vaughan*, 635 S.E.2d at 637 (quoting *Miller v. City of Camden*, 494 S.E.2d 813, 815 (S.C. 1997)). In this case, the Court finds that it is clear that there was a

9

voluntary undertaking by AlliedBarton and that the scope of the voluntary undertaking is set forth in the contracts between the Hospital and Defendant.

AlliedBarton, as a hired security provider, undertook those duties set forth in the contract with KCMC. As evident by the Risk Assessments performed by AlliedBarton in 2007 and 2008, AlliedBarton offered to undertake atleast one duty that Plaintiff has characterized as a breach in this case—AlliedBarton acknowledged that there was a need for a guard dedicated to monitoring the parking lots and grounds during the night and early morning hours. However, KCMC rejected the offer by AlliedBarton to employ an extra security guard for that purpose; as such, AlliedBarton did not voluntarily undertake a duty to monitor the parking lots constantly. The Court has already addressed Hammond's assertion that AlliedBarton should have been patrolling the parking lot at the time of her attack. Hammond has also submitted that Defendant breached its duty of due care by "fail[ing] to notice Stuckey's suspicious activities in the parking lot during the thirty minutes before the attack, despite the Post Orders requiring security officers to '[n]ote any suspicious activity or individuals [and] [t]ake appropriate action and document' suspicious activities." (ECF No. 50, p. 9). This argument is merely an extension of Plaintiff's contention that AlliedBarton should have been patrolling the parking lot at the time of her attack—Plaintiff compares the observations of Andrews, who was in the parking lot before and during Hammond's attack, to the observations of the AlliedBarton security officers who were not present to observe anything. As to the CCTVs that Plaintiff asserts Defendant should have been watching, the Post Orders indicate Defendant's undertaking of a duty to watch those for about an hour a night. (ECF No. 48-16, p. 22). Hammond's contention that it was part of Defendant's duty of due care to constantly monitor the CCTVs is contrary to AlliedBarton's express undertaking. Plaintiff again refers to Thomas's training and claims that it was a breach of

AlliedBarton's due care, but, as previously discussed, the Court finds this submission wholly insufficient to show any sort of breach. As to Hammond's contention that Defendant breached a duty by failing to offer her an escort on the night of her attack, the directive in the Post Orders that guards are to provide escorts upon request contradicts the notion that AlliedBarton undertook a duty to offer such escorts. While Thomas had offered to watch two women walk to their car earlier that night to relieve another hospital patron from having to provide an escort, the single instance of an offered escort and the circumstances surrounding that offer are insufficient to show that AlliedBarton voluntarily undertook to offer escorts to vehicles.

The Court stresses that as the business owner, the Hospital had the "duty to take reasonable action to protect its invitees against the foreseeable risk of physical harm." *Bass v. Gopal, Inc.*, --- S.E.2d ---, 2011 WL 4769091 *1, at *2 (S.C.). The Hospital chose to hire AlliedBarton to take care of some of its security and maintenance needs, but it retained control over the security measures that AlliedBarton implemented. This Court disagrees with Hammond's contention that AlliedBarton should have provided security beyond that which the Hospital authorized and paid AlliedBarton to perform. "Plaintiff submits that the law of voluntary undertaking does not limit the scope of the undertaker's duty based on profit margins," (ECF No. 50, p. 11), but the undertaker should be able to limit the duties that it voluntarily undertakes based on the desires of its employer. Of course, AlliedBarton was required to exercise due care in providing the security services that it contracted with the Hospital to provide. However, as to the services that Hammond asserts would have prevented her attack, which AlliedBarton offered to provide and the Hospital explicitly refused, the lack of these services suggests a failure on the part of the Hospital to fulfill its duty to protect its invitees, not a failure of AlliedBarton to exercise due care in its voluntary undertaking. The security provided

by AlliedBarton, which was limited by the Hospital's decisions, was better than no security at all. The Court is hesitant to require security companies to provide security beyond that which they are paid to provide. A result of such a policy might be that security companies would refuse to provide any security, unless they were called upon by contract to provide full security. Full security measures in many cases would be prohibitively expensive and also unnecessary, and both the businesses who would otherwise contract out their security and the invitees of these businesses would suffer if no security were provided. The Court is in no way undermining the duty to exercise due care in a voluntary undertaking; rather, the Court suggests that an undertaker cannot be held to duties beyond those that it voluntarily undertook.

**IV.     Conclusion**

Based on the reasoning set forth above, the Court hereby grants Defendant's summary judgment motion. This case is dismissed with prejudice.

IT IS SO ORDERED.

November 16, 2011                                       Joseph F. Anderson, Jr.
Columbia, South Carolina                                United States District Judge